UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                Plaintiff,                      Case No. 1:09-CV-1149

  v.                                    Hon. Paul L. Maloney
                                                  United States District Judge

JOSE AND GUILLERMINA SIERRA,

                Defendants.

_____/

## CONSENT DECREE

WHEREAS, Plaintiff, the United States of America, on behalf of the United States

Department of Housing and Urban Development ("HUD") and the United States Environmental

Protection Agency ("EPA"), has filed a complaint alleging that Jose and Guillermina Sierra

("Defendants") violated Section 1018 of the Residential Lead-Based Paint Hazard Reduction Act

of 1992 ("Section 1018"), 42 U.S.C. § 4852d; and

WHEREAS, Section 1018 and the implementing regulations, found at 24 C.F.R. Part 35,

Subpart A, and 40 C.F.R. Part 745, Subpart F, require, among other things, that the owners and

managing agents of residential properties subject to the law make certain disclosures and provide

certain records concerning Lead-Based Paint and Lead-Based Paint Hazards to tenants when a

new lease is entered into or, if the lease predates the effective date of Section 1018, at the first

change to the terms of an existing lease, such as a rent increase; and

WHEREAS, Defendants own and manage, either singly or collectively, 32 residential

properties in Grand Rapids, Michigan constructed prior to 1978 containing approximately 67

units that are subject to this Consent Decree; and

WHEREAS, the United States alleges that Defendants failed to make certain disclosures required by Section 1018 in approximately 32 residential properties in Michigan; and

WHEREAS, the Defendants have had a Lead-Based Paint inspection performed in each residential property in which they have an ownership and/or management interest that is subject to this Consent Decree; and

WHEREAS, the Defendants have agreed to perform Lead-Based Paint Hazard Reduction work in their residential properties that are subject to this Consent Decree; and

WHEREAS, the United States alleges it is entitled to seek injunctive relief in a judicial action, including, but not limited to, an order requiring Defendants to comply with Section 1018 prospectively, and an order requiring Defendants to abate Lead-Based Paint; and

WHEREAS, the United States alleges that Defendants are subject to administrative civil penalties by HUD and EPA for violations of Section 1018 of up to $11,000 per violation; and

WHEREAS, the United States and Defendants agree that settlement of the claims of the United States without further litigation is in the public interest and that entry of this Consent Decree is an appropriate means of resolving this matter; and

WHEREAS, the Parties agree that settlement and entry of this Consent Decree does not constitute admission or acknowledgement of liability or wrongdoing by Defendants, but is intended solely to settle all claims asserted by the United States against Defendants on the terms set forth herein; and

NOW, THEREFORE, upon consent and agreement of the United States and Defendants, and the Court having considered the matter and been duly advised,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED as follows:

## I.  JURISDICTION AND VENUE

1.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1345 and 42 U.S.C. § 4852d(b)(2) and has personal jurisdiction over the Defendants.  Defendants consent to, and shall not challenge entry of, this Consent Decree and the Court's jurisdiction to enter and enforce this Consent Decree.

2.    Venue is proper in this Court pursuant to 42 U.S.C. § 4852d(b)(2) and 28 U.S.C. § 1391(b) and (c) because the lawsuit involves actions that took place, and 32 Subject Properties are located, in the Western District of Michigan.

## II.  PARTIES BOUND

3.    This Consent Decree shall apply to and be binding upon the United States and Defendants, and their heirs, successors and assigns.

4.    Defendants shall remain liable to the United States for all the obligations set forth in this Consent Decree regardless of whether Defendants sell or transfer the property.  If any Defendant intends to sell or transfer any property subject to this Consent Decree prior to termination of the Consent Decree, all of the following must occur before the sale or transfer: (a) all inspections and Hazard Reduction work must be completed at the Subject Property as set forth in Section VII; (b) a clearance examination must be passed as set forth in Section VII and the clearance examination report ("Clearance Report") sent to HUD requesting an expedited approval due to the pending sale or transfer; and (c) HUD must approve the final Clearance Report.  HUD shall provide its approval in writing.

## III.  DEFINITIONS

5.    Unless otherwise expressly provided herein, terms used in this Consent Decree, which are defined in the Residential Lead-Based Paint Hazard Reduction Act ("Act"), shall have the meaning given in the Act or in any regulations promulgated pursuant to the Act.  Whenever other terms listed below are used in this Consent Decree, the following definitions shall apply:

A.     **"Abatement"** means any measure or set of measures designed to permanently eliminate lead-based paint or lead-based paint hazards. Abatement includes, but is not limited to the removal of lead-based paint and dust-lead hazards, the permanent enclosure or encapsulation of lead-based paint, the replacement of painted components or fixtures, or the removal or permanent covering of soil.

B.     **"Clearance Examination"** shall mean an activity conducted after Lead-Based Paint window replacement and other Lead-Based Paint Hazard Reduction work, pursuant to Chapter 15 of the HUD Guidelines, have been performed to determine that the Lead-Based Paint Hazard Reduction work are complete and that no settled dust-lead hazards exist in the unit, common areas, or in an exterior living area. The clearance process includes a visual assessment and collection and analysis of environmental samples. If Hazard Reduction work is performed in separate stages, clearance shall be achieved after each Hazard Reduction event before occupants are allowed to re-enter the work area. The appropriate clearance standards shall be the more restrictive of those set by the jurisdiction where the property is located or by Section 403 of the Toxic Substances Control Act ("TSCA") and its implementing regulations, 40 C.F.R. § 745.227(e)(8)-(9).

C.     **"Day"** shall mean a calendar day. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or Federal holiday, the period shall run until the close of business of the next working day.

D.     **"Elevated Blood-Lead Level"** shall mean a blood-lead concentration equal to or greater than ten (10) micrograms per deciliter (μg/dl) as measured through a venous blood lead test.

E.     A "**force majeure event**" shall mean any event beyond the control of Defendants, their contractors, or any entity controlled by Defendants that delays the performance of any obligation under this Consent Decree despite Defendants' best efforts to fulfill the obligation. "Best efforts" includes anticipating any potential force majeure event and addressing the effects of any such event (a) as it is occurring and (b) after it has occurred, to prevent or minimize any resulting delay to the greatest extent possible. "Force majeure" does not include Defendants' financial inability to perform any obligation under this Consent Decree.

F.     "**Friction surface**" shall mean an interior or exterior surface that is subject to abrasion or friction, including, but not limited to window components, tight fitting or rubbing doors, cabinet doors and drawers, stairway treads and railings, floors, and similar components on outside decks and porches.

G.     "**Hazard Reduction work**" shall mean measures designed to reduce or eliminate human exposure to lead-based paint hazards through methods including interim controls or abatement or a combination of the two.

H.     "**HUD Guidelines**" shall mean the edition of the "HUD Guidelines for the Evaluation and Control of Lead-Based Paint Hazards in Housing" in effect on the date the work is conducted pursuant to this Consent Decree.

I.     "**Impact surface**" means an interior or exterior surface that is subject to damage by repeated sudden force such as doorjambs, door trim, door stops, outside corners of walls, baseboards and shoe moldings, stair risers, and chair rails.

J.     "**Interest**" shall mean interest pursuant to 28 U.S.C. § 1961.

K.     "**Interim Controls**" means a set of measures designed to temporarily reduce

human exposure or likely exposure to lead-based paint hazards, including specialized cleaning, repairs, maintenance, painting, temporary containment, ongoing monitoring of lead-based paint hazards or potential hazards, and the establishment and operation of management and resident education programs.

L.     **"Lead Supervisor"** shall mean a person certified or licensed by EPA or an EPA-authorized state to perform lead abatement, supervise lead abatement workers who perform lead abatement, and prepare occupant protection plans and abatement reports as defined in 40 C.F.R. § 745.226 or the applicable state law and/or regulations in an EPA-authorized state.

M.     **"Lead-Based Paint"** shall mean paint or other surface coatings that contain lead equal to or in excess of 1.0 milligram per square centimeter or 0.5 percent by weight.  If housing subject to this Consent Decree is located in a jurisdiction with a more stringent definition of Lead-Based Paint or safety standard, "Lead-Based Paint," as used herein, shall mean paint or other surface coatings that meet the more stringent standard.

N.     **"Lead-Based Paint Free"** shall mean housing that has been found to be free of paint or other surface coatings that contain lead equal to or in excess of 1.0 milligram per square centimeter or 0.5 percent by weight.  If housing subject to this Consent Decree is located in a jurisdiction with a more stringent definition of Lead-Based Paint or safety standard, "Lead-Based Paint Free," as used herein, shall mean housing that meets the more stringent standard.

O.     **"Lead-Based Paint Free Certification"** shall mean a signed certification provided by the certified Lead-Based Paint inspector or Risk Assessor who conducted the Lead-Based Paint inspection that states:

> *The results of this inspection indicate that no lead in*
> *amounts greater than or equal to 1.0 mg/cm² or 0.5 percent*
> *by weight (or the standard of the state where the property*

*is located if more stringent) was found on any building components, using the inspection protocol in Chapter 7 of the HUD Guidelines for the Evaluation and Control of Lead-Based Paint Hazards in Housing. Therefore, this dwelling qualifies for the exemption in 40 C.F.R. Part 745 and 24 C.F.R. Part 35 for housing being leased that is free of Lead-Based Paint.*

P.   **"Month"** shall mean thirty (30) consecutive days.

Q.   **"Paragraph"** shall mean a portion of this Consent Decree identified by an Arabic numeral or an upper or lower case letter.

R.   **"Risk Assessor"** shall mean an individual who has been trained by an accredited training program and certified by EPA or an authorized state to perform lead-based paint inspections and risk assessments. A Risk Assessor also samples for the presence of lead in dust and soil for the purposes of abatement clearance testing.

S.   **"Section"** shall mean a portion of this Consent Decree identified by a Roman numeral.

T.   **"Section 1018"** shall mean Section 1018 of the Residential Lead-Based Paint Hazard Reduction Act of 1992, 42 U.S.C. § 4852d.

U.   **"Subject Properties"** shall mean the properties listed in Appendix 1 of this Consent Decree.

V.   **"Submit"** shall mean to dispatch via first class United States mail or other delivery service of demonstrated reliability and equivalent or better speed.

W.   **"United States"** shall mean the United States of America on behalf of HUD and EPA.

X.   **"Year of First Construction"** shall mean the year the first building on the property was constructed if the Subject Property has multiple buildings with different years of

7

construction. Where a building was constructed over more than one year, this date shall be the date the construction permit was obtained, or if no permit was obtained, the year construction started.

## IV. GENERAL PROVISIONS

6.      By signing this Consent Decree, Defendants certify that the Subject Properties listed in Appendix 1 of this Consent Decree are the only properties constructed before 1978 that Defendants own, in whole or in part, or manage.

7.      By signing this Consent Decree, Defendants certify that they have no business affiliates that own and/or manage residential properties constructed before 1978.

## V. COMPLIANCE WITH SECTION 1018

8.      Defendants shall comply with all requirements of Section 1018 and its implementing regulations.

9.      No later than one (1) Month after the Effective Date of this Consent Decree, Defendants shall provide to each tenant in the Subject Properties a lead hazard information pamphlet approved by EPA, as well as a "lead paint disclosure form" which shall include, at a minimum, the following:

A.      Any information concerning Lead-Based Paint and/or Lead-Based Paint Hazards in the unit, common areas, and/or exterior or an indication of a lack of such knowledge;

B.      A list and copies of any available records or reports concerning Lead-Based Paint or Lead-Based Paint Hazards in the unit, common areas, and/or exterior or an indication of a lack of records or reports; and

C.      A lead warning statement containing the specific language set forth in regulations promulgated pursuant to Section 1018; and

D.    Signatures and dates of both Defendants and tenant(s).

10.    Within forty-five (45) days of the Effective Date of this Consent Decree, Defendants shall provide written notice to HUD and EPA that they have complied with the requirements of Paragraphs 8 and 9 of this Consent Decree and provide a copy of a disclosure form completed pursuant to Paragraph 9.

## VI. **PAYMENT OF PENALTY**

11.    Within thirty (30) days of the Effective Date of this Consent Decree, Defendants shall pay a civil penalty of $6,000.00 to the United States as an administrative penalty for past violations of Section 1018.

12.    Payment of the civil penalty shall be rendered by electronic funds transfer to the United States Department of Justice, in accordance with current procedures, referencing USAO File Number 2007V00386 and the civil action case name and case number of the Western District of Michigan. Payment shall be made in accordance with instructions provided to Defendants by the Financial Litigation Unit of the U.S. Attorney's Office for the Western District of Michigan. Any funds received after 5:00 p.m. (EST) shall be credited on the next business day.

13.    Notification that payment of the civil penalty has been made, referencing the USAO File Number 2007V00386 and the civil action case name and case number of the Western District of Michigan, shall be provided in accordance with the notification provisions of Section XVII.

14.    If Defendants fail to make any payment under Paragraph 11, Defendants shall be subject to Stipulated Penalties pursuant to Paragraph 23.A. of this Consent Decree. In addition, Interest shall accrue on any unpaid amounts until the total amount due has been received.

15. Defendants shall not deduct the civil penalty paid to the United States, or any Interest or Stipulated Penalties, paid under this Consent Decree from their federal, state, or local income taxes, and the United States does not in any way release Defendants from any claims arising under Title 26 of the United States Code.

## VII. **WORK TO BE PERFORMED**

16. Except as provided in Paragraph 16.D. below, the following Lead-Based Paint inspection, Hazard Reduction work, clearance, and ongoing operations and maintenance ("O&M") work shall be performed for units, common areas and exteriors for each Subject Property:

A. To the extent not previously accomplished, Defendants shall, within one (1) Month of the Effective Date of this Consent Decree, complete Lead-Based Paint inspections of all Subject Properties in accordance with Chapter 7 of the HUD Guidelines. Within fifteen (15) days of receipt of the Lead-Based Paint inspection report ("Inspection Report"), the Defendants shall submit the Inspection Report to HUD. All Inspections must be performed by a certified Risk Assessor. The Inspection Report shall contain 1) unaltered data downloaded from the XRF machine used to perform the inspection, 2) an indication of whether the paint condition is intact, fair, or poor, as defined in Chapter 5 of the HUD Guidelines, 3) the number of windows that contain or are presumed to contain lead-based paint, and 4) site plan sketch for units and common areas. The Defendants may assume that all bare soil on each Subject Property contains Lead-Based Paint Hazards, and perform no further testing. If Defendants have a Lead-Based Paint inspection report, and Lead-Based Paint Free Certificate if available, that indicates a Subject Property is Lead-Based Paint Free, that Subject Property shall not be subject to the

requirements of this Section provided HUD determines that the Inspection Report complies with Chapter 7 of the HUD Guidelines.

B.      Except as specified in Paragraph 16.D., no later than two (2) Months after the Effective Date of this Consent Decree, Defendants shall provide copies to HUD and EPA of a plan for Lead-Based Paint Hazard Reduction work ("Hazard Reduction Plan") for all Subject Properties not found to be Lead-Based Paint Free. The Hazard Reduction Plan shall be prepared by a certified Lead Supervisor and shall include a list of property addresses where hazard reduction work will occur, information about the components to be abated or controlled, the method of abatement or interim control chosen, and the names of certified abatement contractors who will perform required Lead-Based Paint Hazard Reduction work. The Hazard Reduction Plan shall be prepared to ensure that Lead-Based Paint Hazard Reduction work and window replacement required by this Section are conducted in accordance with Chapters 11, 12 and/or 13 of the HUD Guidelines, as applicable. The Hazard Reduction Plan shall include specifications as provided in the HUD Guidelines, Appendix 7.3, Lead-Based Paint Abatement Specification, or the equivalent. The Hazard Reduction Plan shall also include specifications describing how the Defendants will cover bare soil in accordance with Chapter 11 of the HUD Guidelines. After review of the Hazard Reduction Plan, HUD shall, in writing: (a) approve, in whole or in part, the submission; (b) approve the submission with modifications; or (c) disapprove, in whole or in part, the submission, directing the Defendants to resubmit the document after modification to address HUD's comments. If HUD disapproves of or requires revisions to the Hazard Reduction Plan, in whole or in part, Defendants shall amend and submit to HUD a revised Hazard Reduction Plan which is responsive to the directions in HUD's comments, within fifteen (15)

days of receiving such comments. The Hazard Reduction Plan must be approved by HUD before any work is performed at the Subject Properties, pursuant to this Consent Decree.

C.   At least five (5) business days before the commencement of any Lead-Based Paint Hazard Reduction work including window replacement, Defendants shall ensure that the Lead Supervisor prepares a Notification for Lead-Based Paint Abatement Activities in accordance with State and/or local laws and/or regulations where the work is being performed, or 40 C.F.R. Part 227, as applicable. This notice shall contain the date when Lead-Based Paint abatement activities will start, the name of the certified Lead Supervisor or firm performing the work, the property address, and a brief description of the Lead-Based Paint abatement activities being performed. Defendants shall provide copy of this notification to HUD and EPA electronically or via facsimile transmission in accordance with Paragraph 41 at the same time the notice is provided to the State, local jurisdiction, and EPA.

D.   In lieu of performing the Lead-Based Paint Hazard Reduction work described in Paragraph 16.F., Defendants may choose to demolish certain Subject Properties. No later than sixty (60) Days after the Effective Date of this Consent Decree, Defendants shall provide to HUD and EPA a list of those Subject Properties which they intend to demolish. Demolition of such Subject Properties must be completed within one (1) year after the Effective Date of this Consent Decree and must be performed in accordance with the laws of the jurisdiction where the property is located. For any Subject Property which has not been demolished by the end of the one-year period, within one (1) Month after the decision is made not to demolish, Defendants shall conduct a Lead-Based Paint inspection in accordance with Paragraph 16.A., and Lead-Based Paint Hazard Reduction work in accordance with Paragraph 16.F. Such Hazard Reduction

work shall be completed within three (3) Months. Any property addressed under this provision shall be subject to the O&M provisions specified in Paragraph 16.I.

E.     No later than one (1) Month after approval of the Hazard Reduction Plan, Defendants shall submit to HUD and EPA a plan for ongoing operations and maintenance ("O&M Plan"), including ongoing monitoring for all Subject Properties that are not Lead-Based Paint Free. O&M shall be performed for all components where Hazard Reduction work was performed and/or lead-based paint was identified and not removed. After review of the O&M Plan, HUD shall, in writing: (a) approve, in whole or in part, the submission; (b) approve the submission with modifications; or (c) disapprove, in whole or in part, the submission, directing the Defendants to resubmit the document after modification to address HUD's comments. If HUD disapproves of or requires revisions to the O&M Plan, in whole or in part, Defendants shall amend and resubmit to HUD a revised O&M Plan which is responsive to the directions in HUD's comments, within fifteen (15) days of receiving such comments. The O&M Plan shall be prepared in accordance with Chapters 6 and 17 of the HUD Guidelines.

F.     For each Subject Property not identified as Lead-Based Paint Free, the following Lead-Based Paint Hazard Reduction work shall be performed in the units, common areas, and exteriors of each Subject Property:

(i).     Except as provided in Paragraph 16.F.(ii) and (iii), within six (6) years after approval of the Hazard Reduction Plan,

        a.  All windows, including window sills, not identified as Lead-Based Paint Free shall be replaced in accordance with the Hazard Reduction Plan and Chapter 12 of the HUD Guidelines.

        b.  Abatement of all Friction and Impact Surfaces that contain Lead-Based Paint.

c. Stabilization of any other non-Friction and Impact surfaces or components that contain deteriorated Lead-Based Paint as identified in the Inspection Report.

d. Removal, or HEPA vacuuming and steam cleaning of all carpeting.

e. Rendering of all interior rough, pitted, or porous horizontal surfaces to be smooth and cleanable.

(ii).    All Lead-Based Paint Hazard Reduction work specified in Paragraph 16.F.i., above, shall be completed within six (6) Months after approval of the Hazard Reduction Plan in all Subject Properties that contain a child six (6) years of age or under or a pregnant woman.

(iii).    Within one (1) year after approval of the Hazard Reduction Plan, bare soil identified on the grounds of each Subject Property shall be covered with a vegetative ground covering, mulch, or other appropriate covering in accordance with Chapter 11 of the HUD Guidelines.

(iv).    Worksite preparation and occupant protection shall be in accordance with Chapter 8 of the HUD Guidelines.

(v).    Daily and final cleanups shall be in accordance with Chapter 14 of the HUD Guidelines.

(vi).    Clearance Examination must be completed by a certified Lead-Based Paint Risk Assessor in each building upon completion of final cleanup in accordance with Chapter 15 of the HUD Guidelines.  Within fifteen (15) days of receipt of the Lead-Based Paint clearance examination report ("Clearance Report"), the Defendants shall submit the Clearance Report to HUD.  The Clearance Report shall contain all results of dust samples analyzed at a laboratory recognized by EPA through the National Lead Laboratory Accreditation Program ("NLLAP") as being capable of performing analyses for lead compounds in paint chips, dust, and soil samples

14

and the results of a visual assessment of work areas and Lead-Based Paint Hazard Reduction work performed. If the results indicate that clearance is not achieved, Defendants shall repeat the cleaning procedures identified above under Paragraph 16.F.(v) and repeat dust clearance sampling within five (5) days of the failed Clearance Examination, and repeat this procedure until clearance has been attained.

G.     In each of the six (6) years, Defendants shall make substantial and reasonable progress on the Lead-Based Paint Hazard Reduction work agreed to in this Consent Decree and shall detail the progress made in the Annual Report required in Paragraph 18. The Parties agree that substantial and reasonable progress shall mean completion of work, as set forth in Section VII of this Consent Decree, in a minimum of 11 units per year. For the purposes of this Consent Decree, units that have been tested in accordance with Chapter 7 of the HUD Guidelines and determined to be Lead-Based Paint Free may be counted towards progress.

H.     The timelines in this Section shall not apply where Defendants have been notified by a governmental entity or become aware of a unit where a child with an Elevated Blood-Lead Level resides or is a regular visitor (i.e., visits at least two (2) different days within any week for at least three (3) hours on each day, and the combined annual visits last at least sixty (60) hours). Defendants shall comply with such notice(s) including the timelines set forth in the notice(s). Additionally, Defendants shall perform all work under this Section in the unit within sixty (60) Days of notification or becoming aware of a unit where a child with an Elevated Blood-Lead Level resides or is a regular visitor. If exteriors and common areas are required to be treated by any governmental entity, Defendants shall also treat those areas within sixty (60) Days of notification or becoming aware of a unit where a child with an Elevated Blood-Lead Level resides or is a regular visitor.

I.     Ongoing operations and maintenance ("O&M") in all Subject Properties that are

not certified Lead-Based Paint Free shall be implemented at the completion of any abatement or

interim control activity, and shall be conducted in accordance with Chapters 6 and 17 of the

HUD Guidelines and the O&M Plan.  During reevaluations, Defendants shall ensure that all

methods used to enclose or encapsulate all Lead-Based Paint surfaces are still intact and the

abatement and interim control methods have not failed.  If any Lead-Based Paint abatement or

interim control, or other surface containing lead-based paint has failed or deteriorated,

Defendants shall repair the area to the same level in accordance with Chapters 11, 12 and/or 13

of the HUD Guidelines, as applicable, and perform a Clearance Examination within one (1)

Month of discovery of the failure.  If Lead-Based Paint dust hazards or bare soil are discovered

as part of ongoing reevaluations, Defendants shall address them according to Chapter 11 of the

HUD Guidelines.

## VIII.  REPORTING REQUIREMENTS

17.     Defendants shall submit any state, city, and/or county notices relating to Lead-

Based Paint violations at the Subject Properties received or acquired to HUD and EPA at the

relevant address listed in Paragraph 41 within fifteen (15) days of receipt.

18.     On or before thirteen (13) Months after the Effective Date and annually thereafter

until completion of all work performed under Section VII, Defendants shall submit to HUD and

EPA a written annual report ("Annual Report") covering the previous twelve (12) Month period.

The Annual Report shall include, at a minimum: (a) a list of the property addresses where

properties have completed Lead-Based Paint inspections; (b) the status of work performed under

Section VII, including the type of abatement or interim controls and components abated or

controlled, and a list of the property addresses and units where work has been completed and

cleared during that reporting period; (c) a list of Subject Properties found to be Lead-Based Paint Free; (d) the status of ongoing operations and maintenance activities in accordance with Section VII, Paragraph 16.I.; and (e) any and all information concerning the cost of Lead-Based Paint inspections and Lead-Based Paint Hazard Reduction work, the source of those funds, and the number of units tested and completed under Section VII

19.     Defendants shall ensure contractor compliance with any state, city, and/or county requirements for reporting Lead-Based Paint inspections and Lead-Based Paint Hazard Reduction work in accordance with the laws of the jurisdiction where the property is located.

### IX.  QUALIFICATIONS TO CONDUCT LEAD-BASED PAINT WORK

20.     All Lead-Based Paint inspections, Lead-Based Paint Hazard Reduction work, and Lead-Based Paint clearance examinations performed shall be consistent with the HUD Guidelines and conducted by individuals certified to perform the work in accordance with the laws of the jurisdiction where the property is located.  Persons performing interim controls, visual assessments for O&M, and general maintenance shall be trained in either HUD's one day "Lead Safe Work Practices" class or the HUD/EPA "Remodeling, Repair, and Painting" class. All Hazard Reduction work shall be supervised by a Lead Supervisor.

21.     Defendants shall ensure that Clearance Examinations are not conducted by the same individual and/or same or affiliated business entity conducting the Lead-Based Paint Hazard Reduction work that is being evaluated by the Clearance Examination.

22.     Defendants shall ensure that Lead-Based Paint inspections are not done by the same individual and/or same or affiliated business entity doing Lead-Based Paint Hazard Reduction work on the Subject Properties.

## X. STIPULATED PENALTIES

23.     In the event that Defendants fail to pay the penalty in a timely manner in accordance with Paragraph 11, fail to comply with any of the terms or provisions of this Consent Decree relating to the submission of plans or performance of the work described in Section VII above or the submission of reports under Section VIII, fail to comply with Paragraphs 8-10 regarding compliance with Section 1018, or use any funds other than their own as set forth in Paragraph 37, Defendants shall be liable for stipulated penalties according to the provisions set forth below:

A.     If the Defendants fail to make timely payment of the penalty provided for in Section VI, Defendants shall be required to pay as stipulated penalties $400 per day. Stipulated penalties shall accrue until such time as the original penalty, any interest, and all accrued stipulated penalties are paid.

B.     If the Defendants fail to submit any plans, complete any Lead-Based Paint inspections, Lead-Based Paint Hazard Reduction work, or any clearance examinations, or to conduct O&M as described in Section VII and in accordance with the deadlines set forth in this Consent Decree, Defendants shall pay stipulated penalties of $200 per day per violation per each unit until the plans, inspections, Hazard Reduction work, and/or O&M is completed. If any Lead-Based Paint Hazard Reduction work fails because of Defendants' failure to follow the Hazard Reduction Plan or HUD Guidelines and/or conduct O&M as described in Section VII, those properties shall not be considered abated or treated in accordance with this Consent Decree and stipulated penalties shall accrue.

C.     If the Defendants fail to submit any information or reports to HUD or EPA, as described in Paragraph 13, Section VII, or Section VIII, in accordance with the requirements

18

and/or deadlines set forth in this Consent Decree, the Defendants shall pay stipulated penalties of $200 per day for each day each such submission is deemed inadequate and/or late.

D.      If the Defendants fail to comply with the requirements of Section 1018 and its implementing regulations, as required by Paragraph 8, to provide tenant disclosure, as required by Paragraph 9, and/or to provide notice of compliance with a copy of a completed disclosure form, as required by Paragraph 10, the Defendants shall pay stipulated penalties of $200 per day for each day the disclosure and/or notice and/or copy of a completed disclosure form is deemed inadequate and/or late.

E.      If the Defendants fail to use their own funds as set forth in Paragraph 37, or use HUD Office of Healthy Homes and Lead Hazard Control grant funds for any work at the Subject Properties or any other Federal, State, or local grant funds or other assistance to do any of the work required in Section VII of this Consent Decree, the Defendants shall pay stipulated penalties in the amount equal to double the amount of the grant funds or other assistance received.

F.      Payment of stipulated penalties and any applicable interest shall be made to the United States in the manner set forth in Paragraph 12 of this Consent Decree. Defendants shall pay the stipulated penalties and any applicable interest not more than fifteen (15) days after receipt of written demand by the United States for such penalties.

24.     Stipulated Penalties shall accrue regardless of whether the United States has notified the Defendants of the violation or made a demand for payment, but need only be paid upon demand. All penalties shall begin to accrue on the day after payment or the required activity is due and shall continue to accrue through the date of payment, or until the required activity is performed. However, the United States may, in its unreviewable discretion, waive or

reduce the amount of any Stipulated Penalty. Nothing herein shall prevent the United States from seeking other relief that may be available for non-compliance, nor prevent the simultaneous accrual of separate penalties for separate violations of this Consent Decree.

## XI.   FORCE MAJEURE

25.   The Defendants shall provide notice orally or by electronic or facsimile transmission to the Civil Division Chief of the United States Attorney's Office as detailed in Section XVII of this Consent Decree (Notice) as soon as possible, but not later than 72 hours after the time the Defendants first knew of, or by the exercise of due diligence, should have known of, a claimed force majeure event. Defendants shall also provide formal, written notice, as provided in Section XVII of this Consent Decree (Notice), within seven (7) days of the time the Defendants first knew of, or by the exercise of due diligence, should have known of, the event. The notice shall state the anticipated duration of any delay; its cause(s); the Defendants' past and proposed actions to prevent or minimize any delay; a schedule for carrying out those actions; and the Defendants' rationale for attributing any delay to a force majeure event. Failure to provide oral and written notice as required by this Paragraph shall preclude the Defendants from asserting any claim of force majeure.

26.   If the United States agrees that a force majeure event has occurred, the United States may agree to extend the time for the Defendants to perform the affected requirements for the time necessary to complete those obligations. An extension of time to perform the obligations affected by a force majeure event shall not, by itself, extend the time to perform any other obligation. Where the United States agrees to an extension of time, the appropriate modification shall be made pursuant to Section XIX of this Consent Decree (Integration).

27.     If the United States does not agree that a force majeure event has occurred, or does not agree to the extension of time sought by the Defendants, the United States' position shall be binding, unless the Defendants invoke Dispute Resolution under Section XII of this Consent Decree. In any dispute involving force majeure, the Defendants bear the burden of proving, by a preponderance of the evidence, that each claimed force majeure event is in fact a force majeure event; that the Defendants gave the notice required by Paragraph 25 of this Section; that the force majeure event caused any delay Defendants claim was attributable to that event; and that the Defendants exercised best efforts to prevent or minimize any delay caused by the event.

## XII.    DISPUTE RESOLUTION

28.     Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree. However, the procedures set forth in this Section shall not apply to actions by the United States to enforce the obligations of the Defendants under this Consent Decree that the Defendants have not timely disputed in accordance with this Section.

29.     Any dispute which arises under or with respect to this Consent Decree shall in the first instance be the subject of informal negotiations between the Parties. The period for informal negotiations shall not exceed thirty (30) days from the time the dispute arises, unless it is modified by written agreement of the Parties. The dispute shall be considered to have arisen when one Party sends the other Party a written Notice of Dispute.

30.     If the Parties are not in agreement at the end of this informal negotiations period, the position of the United States shall be controlling unless the Defendants file a petition with the

21

Court for resolution of the dispute within twenty-one (21) days of receipt of the United States' final position. The petition shall set out the nature of the dispute with a proposal for its resolution. The United States shall have twenty-one (21) days to file a response with an alternate proposal for resolution. In any such dispute, the Defendants shall have the burden of proving that the United States' proposal is arbitrary and capricious.

31. The invocation of formal dispute resolution procedures under this Section shall not extend, postpone or affect any obligation of the Defendants under this Consent Decree not directly in dispute, unless the United States or the Court agrees otherwise. Stipulated Penalties with respect to the disputed matter shall continue to accrue but payment shall be stayed pending resolution of the dispute as provided in Paragraph 24. Notwithstanding the stay of payment, Stipulated Penalties shall accrue from the first day of non-compliance with any applicable provision of this Consent Decree. In the event that the Defendants do not prevail on the disputed issue, Stipulated Penalties shall be assessed and paid as provided in Paragraph 24.

## XIII.  **RIGHT OF ENTRY**

32. HUD, EPA and their representatives, contractors, consultants, and attorneys shall have the right of entry into and upon all Subject Properties owned or controlled by the Defendants, at all reasonable times, upon proper presentation of credentials, for the purposes of:

A. monitoring the progress of activities required by this Consent Decree;

B. verifying any data or information required to be submitted pursuant to this Consent Decree;

C. obtaining samples and, upon request, splits of any samples taken by the Defendants or their consultants (upon request, the Defendants will be provided with splits of all samples taken by the United States); and

D.    otherwise assessing the Defendants' compliance with this Consent Decree.

33.    This Section in no way limits or affects any right of entry and inspection held by the United States, HUD, EPA, and any State, County, or City in which the property is located pursuant to applicable federal, state or local laws, regulations, or permits.

## XIV.    COVENANT NOT TO SUE

34.    In consideration of the payments required by this Consent Decree and the work to be performed, and except as otherwise provided in this Consent Decree, the United States covenants not to sue or take administrative or other action against the Defendants for the violations of Section 1018 at the Subject Properties alleged in the complaint in this matter through the date of lodging. This covenant not to sue with respect to the Defendants is conditioned upon the complete and satisfactory performance by the Defendants of their obligations under this Consent Decree. This covenant not to sue extends only to the Defendants and does not extend to any other person or business entity.

## XV.    PLAINTIFFS' RESERVATIONS OF RIGHTS

35.    The covenant not to sue set forth above does not pertain to any matters other than those expressly specified in Paragraph 34. The United States reserves, and this Consent Decree is without prejudice to, all rights against Defendants with respect to all other matters, including but not limited to, the following:

A.    claims based on a failure by the Defendants to meet a requirement of this Consent Decree;

B.    claims based upon violations of Section 1018 that occur after the date of lodging of this Consent Decree;

C.    criminal liability; and

D.      all claims not barred by Paragraph 34 of this Consent Decree.

## XVI.  MISCELLANEOUS

36.     Defendants hereby certify that they are not required to perform the work required in Section VII by any Federal, state, or local law or regulation (including any lead abatement order).  Defendants further certify that they have not received, and are not presently negotiating to receive, credit in any other enforcement action for the work required in Section VII.

37.     Defendants also certify that they will use their own funds, and that no HUD Office of Healthy Homes and Lead Hazard Control grant funds will be used for any work at the Subject Properties and that no Federal, State, or local grant funds or other assistance will be used to complete the work required in Section VII.

38.     This Consent Decree in no way affects Defendants' responsibilities to comply with all federal, state, or local laws and regulations.

39.     Except as otherwise provided in this Consent Decree, each Party shall bear its own costs and attorneys' fees in this action.

## XVII.  NOTICES AND SUBMISSIONS

40.     Whenever, under the terms of this Consent Decree, notice is required to be given or a document is required to be sent by one Party to another, it shall be in writing and directed to the individuals at the addresses specified below, unless those individuals or their successors give notice of a change to the other Party in writing.  Written notice as specified herein shall constitute complete satisfaction of any written notice requirement of this Consent Decree with respect to the United States and the Defendants.

41.     All notices and reports shall refer to this Consent Decree and the date of entry of the Consent Decree, and shall cite the case name of United States v. Jose and Guillermina Sierra

24

and the case number.

U.S. Attorney's Office:

Chief, Civil Division
United States Attorney's Office
330 Ionia Avenue, N.W.
Suite 501
Grand Rapids, MI 49503
(phone)
(fax)

U.S. Department of Justice:

Chief, Environmental Enforcement Section
U.S. Department of Justice
P.O. Box 7611
Ben Franklin Station
Washington, DC 20044
D.J. Ref. _____

U.S. Department of Housing and Urban Development:

Director, Lead Programs
  Enforcement Division
Office of Healthy Homes and Lead Hazard Control
U.S. Department of Housing and Urban Development
451 7th Street, SW
Room 8236
Washington, DC 20410
(202) 755-1785 (phone)
(202) 708-4248 (fax)
Bruce.P.Haber@hud.gov (email)

and

John B. Shumway, Deputy Assistant General Counsel
  for Program Compliance
Office of General Counsel
U.S. Department of Housing and Urban Development
451 7th Street, SW, Room 9253
Washington, DC 20410

25

U.S. Environmental Protection Agency

Chief, Pesticides and Toxics Compliance Section
U.S. Environmental Protection Agency
Region 5
77 West Jackson Boulevard
Chicago, IL 60604

Defendants:

Jose and Guillermina Sierra
2146 South Division Ave.
Grand Rapids, MI 49507

42.     Any Party may change either the notice recipient or the address for providing

notices to it by serving all other Parties with a notice setting forth such new notice recipient or

address.

43.     Any notice, report, certification, data presentation, or other document submitted

by Defendants pursuant to this Consent Decree which discusses, describes, demonstrates,

supports any findings, or makes any representation concerning Defendants' compliance or non-

compliance with any requirement of this Consent Decree shall be certified by Defendants or a

duly authorized representative of Defendants.  A person is a "duly authorized representative"

only if:  (a) the authorization is made in writing; (b) the authorization specifies either an

individual or position having responsibility for overall operation of the regulated facility or

activity (a duly authorized representative may thus be either a named individual or any individual

occupying a named position); and (c) the written authorization is submitted to the United States

consistent with this Paragraph.

44.     The certification required by Paragraph 43, above, shall be in the following form:

I certify that the information contained in or accompanying this [type of submission] is true, accurate and complete. With regard to [the/those identified portion(s)] of this [type of submission] for which I cannot personally verify [its/their] accuracy, I certify under penalty of law that this [type of submission] and all attachments were prepared in accordance with procedures designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, or the immediate supervisor of such persons, the information submitted is, the best of my knowledge and belief, true, accurate and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fines and imprisonment for knowing violations.

Signature: _____

Name: _____

Title: _____

## XVIII.  RETENTION OF JURISDICTION

45.     This Court shall retain jurisdiction over this matter for the purpose of interpreting and enforcing the terms of this Consent Decree.

## XIX.  INTEGRATION

46.     This Consent Decree and its Appendix constitute the final, complete and exclusive agreement and understanding between the Parties with respect to the settlement embodied in this Consent Decree.  It may not be enlarged, modified, or altered unless such modifications are made in writing and approved by the Parties and the Court.  The Parties acknowledge that there are no representations, agreements or understandings relating to the settlement other than those expressly contained in this Consent Decree.

## XX.  LODGING AND OPPORTUNITY FOR PUBLIC COMMENT

47.     Defendants agree and acknowledge that final approval of this Consent Decree by

the United States and entry of this Consent Decree are subject to the requirements of 28 C.F.R. §
50.7, which provides for notice of the lodging of this Consent Decree in the Federal Register,
opportunity for public comment for at least thirty (30) days, and consideration of any comments
prior to entry of the Consent Decree by the Court. The United States reserves its right to
withdraw consent to this Consent Decree based on comments received during the public notice
period. Defendants consent to entry of this Consent Decree without further notice to the Court.

48. If for any reason the Court should decline to approve this Consent Decree in the
form presented, this Consent Decree is voidable at the discretion of any Party and the terms of
the Consent Decree may not be used as evidence in any litigation between the Parties.

## XXI. EFFECTIVE DATE

49. The effective date of this Consent Decree shall be the date upon which it is
entered by the Court.

## XXII. RECORD RETENTION AND PRESERVATION

50. Defendants shall preserve, during the pendency of this Consent Decree and for a
minimum of at least twelve (12) months after its termination, all documents and records in their
custody, control or possession and in the custody, control or possession of their employees,
agents, assigns, contractors, subcontractors or consultants, which in any manner relate to this
Consent Decree or to the performance of work under this Consent Decree. At the end of this
twelve (12) month period and at least thirty (30) calendar days before any document or record is
destroyed, Defendants shall notify and make available to the United States such documents and
records, or shall provide the originals or accurate, true and complete copies of such documents
and records to the United States. Defendants shall not destroy any document or record to which
the United States has requested access for inspection or copying until the United States has

obtained such access or copies or withdrawn its request for such access or copies.

## XXIII. SIGNATORIES/SERVICE

51.     Each undersigned representative of the United States and Defendants certifies that he or she has reviewed this Consent Decree, and had the opportunity to have this Consent Decree reviewed by counsel, and is authorized to enter into the terms and conditions of this Consent Decree and to execute and bind legally such Party to this document.

52.     Defendants hereby agree not to oppose entry of this Consent Decree by this Court or to challenge any provision of this Consent Decree, unless the United States has notified Defendants in writing that it no longer supports entry of the Consent Decree based on public comments received pursuant to Paragraph 47 above.

53.     Defendants agree that the person identified on their behalf under Section XVII is authorized to accept service of process by mail on behalf of Defendants with respect to all matters arising under or relating to this Consent Decree.  Defendants hereby agree to accept service by certified mail in that manner and to waive the formal service requirements set forth in Rule 4 of the Federal Rules of Civil Procedure and any applicable local rules of this Court, including but not limited to, service of a summons.

54.     Upon approval and entry of this Consent Decree by the Court, the Consent Decree shall constitute a final judgment pursuant to Rules 54 and 58 of the Federal Rule of Civil Procedure.

## XXIV. TERMINATION

55.     This Consent Decree shall terminate after all of the following have occurred:

A.      Defendants have completed all work required by this Consent Decree;

B.      Defendants have paid all penalties and interest due under this Consent Decree and

no penalties are outstanding or owed to the United States;

  C. Defendants have certified compliance with the terms and conditions of this Consent Decree to the United States; and

  D. The United States has not disputed Defendants' certification. If the United States disputes Defendants' certification, the Consent Decree shall remain in effect pending resolution of the dispute by the Parties or the Court. If the United States does not contest the certification, the United States shall petition or the Parties shall jointly petition the Court to terminate the Consent Decree.

  So entered in accordance with the foregoing this  3rd  day of  March , 2009.


        /s/ Paul L. Maloney
        UNITED STATES DISTRICT COURT JUDGE

<u>United States v. Jose and Guillermina Sierra</u>

THE UNDERSIGNED PARTIES enter into this Consent Decree in the above matter, relating to the sites enumerated in this Consent Decree:

FOR PLAINTIFF, UNITED STATES OF AMERICA:

IGNACIA S. MORENO
Assistant Attorney General
Environment and Natural Resources Division


Date  12-21-2009

W. BENJAMIN FISHEROW
Deputy Chief
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530


DONALD A. DAVIS
United States Attorney


Date_____

JOSEPH ROSSI
330 Ionia Avenue, N.W.
Suite 501
Grand Rapids, MI 49503
(616) 456-2404

<u>United States v. Jose and Guillermina Sierra</u>

THE UNDERSIGNED PARTIES enter into this Consent Decree in the above matter, relating to the sites enumerated in this Consent Decree:

FOR PLAINTIFF, UNITED STATES OF AMERICA:

JOHN C. CRUDEN
Acting Assistant Attorney General
Environment and Natural Resources Division


_____     Date_____
W. BENJAMIN FISHEROW
Deputy Chief
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530



DONALD A. DAVIS
United States Attorney


_____     Date___8/7/2009_____
JOSEPH ROSSI
330 Ionia Avenue, N.W.
Suite 501
Grand Rapids, MI 49503
(616) 456-2404

United States v. Jose and Guillermina Sierra

FOR UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT:


_____    Date 8/07/09
JOHN P. OPITZ
Associate General Counsel for the
  Office of Finance and Regulatory Compliance



Lee Ann Richardson for John Shumway  Date 8/7/09
JOHN B. SHUMWAY
Deputy Assistant General Counsel
  for Program Compliance
U.S. Department of Housing and Urban Development
451 Seventh Street, SW
Washington, DC 20410
(202) 708-4184 ext. 5190

<u>United States v. Jose and Guillermina Sierra</u>

FOR THE UNITED STATES ENVIRONMENTAL PROTECTION AGENCY:


Date 8/10/09

BHARAT A. MATHUR
Acting Regional Administrator
U.S. Environmental Protection Agency
Region 5
77 West Jackson Boulevard
Chicago, IL 60604


Date 8/17/09

ROBERT A. KAPLAN
Regional Counsel
U.S. Environmental Protection Agency
Region 5
77 West Jackson Boulevard
Chicago, IL 60604


Date August 5, 2009

MARY T. McAULIFFE
Associate Regional Counsel
U.S. Environmental Protection Agency
Region 5
77 West Jackson Boulevard
Chicago, IL 60604
(312) 886-6237

United States v. Jose and Guillermina Sierra

Defendants

_____  Date 7-29 09
JOSE SIERRA

_____  Date 7-29-09
GUILLERMINA SIERRA

FOR JOSE AND GUILLERMINA SIERRA:

_____  Date 8/3/09
SEAN P. FITZGERALD (P60654)
Attorney for Jose and Guillermina Sierra
Kreis, Enderle, Hudgins & Borsos, P.C.
171 Monroe Ave., NW, Ste. 900B
Grand Rapids, MI 49503

# APPENDIX 1: SUBJECT PROPERTY LIST

(Subject Properties with Street Addresses and State, Number of Units,
Units with Children, and Year of First Construction)

|     | Address        | Number of Units | Units w/Children | Construction date |
|-----|----------------|-----------------|------------------|-------------------|
| 1.  | 16 Griggs      | 1               | No               |                   |
| 2.  | 19 Elm         | 2               | Yes              |                   |
| 3.  | 608 Liberty    | 1               | Yes              |                   |
| 4.  | 1055 Madison   | 2               | Vacant           |                   |
| 5.  | 1152 Madison   | 2               | Vacant           |                   |
| 6.  | 437 Hall       | 2               | Vacant           |                   |
| 7.  | 24 Burton      | 2               | No               |                   |
| 8.  | 29 Burton      | 2               | No               |                   |
| 9.  | 39 Burton      | 3               | Yes              |                   |
| 10. | 43 Burton      | 2               | Yes              |                   |
| 11. | 44 Burton      | 3               | No               |                   |
| 12. | 52 Burton      | 4               | No               |                   |
| 13. | 401 Burton     | 2               | Yes              |                   |
| 14. | 1748 Division  | 2               | Yes              |                   |
| 15. | 1814 Division  | 2               | No               |                   |
| 16. | 1818 Division  | 1               | No               |                   |
| 17. | 1822 Division  | 2               | No               |                   |
| 18. | 1826 Division  | 1               | No               |                   |
| 19. | 1854 Division  | 2               | Yes              |                   |
| 20. | 1912 Division  | 6               | No               |                   |
| 21. | 1916 Division  | 2               | No               |                   |
| 22. | 1822 Horton    | 2               | Vacant           |                   |
| 23. | 1841 Horton    | 2               | Vacant           |                   |
| 24. | 1905 Horton    | 2               | Vacant           |                   |
| 25. | 1960 Horton    | 2               | Yes              |                   |
| 26. | 2032 Horton    | 2               |                  |                   |
| 27. | 45 Sutton      | 2               | Yes              |                   |
| 28. | 48 Sutton      | 2               | No               |                   |
| 29. | 141 Griggs     | 2               | Yes              |                   |
| 30. | 525 Shamrock   | 2               | Yes              |                   |
| 31. | 415 Laurel     | 2               | No               |                   |
| 32. | 222 Montgomery | 1               | No               |                   |